**BEFORE THE JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| _____ | |
| ) | |
| IN RE MIRENA ) | |
| PRODUCT LIABILITY LITIGATION ) | |
| ) | MDL Docket No. <u>2434</u> |
| ) | |
| _____) | |

## RESPONSE OF PLAINTIFFS KELLI AND JUSTIN BAUGH AND JAMIE AND JAMES WELLS TO MOTION TO TRANSFER RELATED ACTIONS FOR COORDINATED PRETRIAL PROCEEDINGS

Plaintiffs Kelli and Justin Baugh and Jamie and James Wells (hereinafter "Plaintiffs" or "Movants") hereby respond through counsel, pursuant to Title 28, United States Code, Section 1307 and Rule 7.2(a) of the Rules of the Judicial Panel on Multidistrict Litigation, to the Motion to Transfer Related Actions for Coordinated Pretrial Proceedings. Plaintiffs respond that centralization is necessary based on the number of cases expected to be filed in Federal Court and the need for avoidance of inconsistent rulings.

Plaintiffs further move that transfer to the United States District Court for the District of South Carolina is an appropriate District for this MDL. This District offers judicial resources and experience, a convenient location for the parties, and a timely docket for cases centralized. Currently before the South Carolina District Court, Charleston Division, and Judge Richard Gergel, in the _Wells_ matter. Should these cases be transferred to South Carolina, we believe the

matter of *Baugh v. Bayer Health Care Pharmaceuticals, Inc.,* 4:11-cv-00525-RBH,[1] the case that is by far the most advanced in the litigation, will likewise be transferred to Judge Gergel.

## BACKGROUND

Plaintiffs in this litigation allege injuries associated with their Mirena intrauterine system ("IUS"), manufactured by Bayer Healthcare Pharmaceuticals, Inc. ("Bayer").   Specifically, Plaintiffs allege that, following uneventful insertion of their Mirena, the IUS spontaneously perforated the uterine lining necessitating surgical removal.   In many women, these events created greater medical issues, often leading to necessary hysterectomy or other invasive surgery. To date, at least 20 actions have been filed in 13 federal courts.   It is anticipated that numerous other cases will be filed within the next thirty (30) days.   The causes of action are similar among cases, as are the injuries suffered by each of the Plaintiffs.

## ARGUMENT

### I.     COMMON FACTS AMONG PLAINTIFFS PREDOMINATE AND SUPPORT TRANSFER

28 U.S.C. §1407 provides for the transfer of actions to one district for coordinated or consolidated pretrial proceedings where actions pending in different districts involve one or more common questions of fact.  28 U.S.C. §1407(a):

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.  Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for

---

[1] Plaintiffs Kelli and Justin Baugh filed their case in the District of South Carolina, Florence Division, in January 2011.  As of February 5, 2013, the matter is stayed pending the Panel's decision.  Discovery in that matter is advanced, and the case would serve as an appropriate lead trial case for this MDL.

> the convenience of parties and witnesses and will promote the just
> and efficient conduct of such actions.

28 U.S.C. § 1407(a); *Manual for Complex Litigation (Fourth),* §20.13. Multidistrict litigation settings are designed to "eliminate the potential for contemporaneous pretrial rulings by coordinating district and appellate courts in multidistrict related civil action." *In re Multidistrict Private Civ. Treble Damages Litig.*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Consolidation is especially important in multidistrict litigations where "the potential for conflicting, disorderly, chaotic" action is greatest. *Id.,* at 493. Transfer of related actions to a single district for pretrial proceedings avoids conflicting pretrial discovery and ensures uniform and expeditious treatment in the pretrial procedures. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006). In the various actions filed in federal district courts in at least a dozen different states, Bayer has filed multiple motions to dismiss on various bases in several federal court cases. In the absence of transfer, there is a strong risk of inconsistent rulings from different district courts.

Discovery in the Mirena cases has been and will continue to be extensive, and avoidance of duplicative efforts of both Plaintiffs and Bayer should motivate transfer and consolidation. Filing counsel, as part of the *Baugh* matter, has been entrenched in discovery involving over one million documents to date and has taken three corporate witness depositions. Much more discovery remains, and Plaintiffs envision potentially dozens of depositions will be taken. As the Panel is aware, "eliminating duplicate discovery in similar cases" is among the "sound reasons for centralizing pretrial proceedings." Hon. John G. Heyburn II, *A View from the Panel: Part of the Solution,* 82 Tul. L. Rev. 2225, 2236 (2008). Bayer has taken positions in various Federal court cases that thwarts this goal. For instance, Bayer cross-noticed corporate depositions taken

in the *Baugh* matter in multiple federal court and state court matters, yet withdrew the cross-notice in cases filed by others, thereby creating the inevitable scenario in which those witnesses will be deposed again.

More than any other reason, consolidation of Mirena cases is appropriate because of the overwhelming similarities among questions of law and fact.  Each of the related actions allege similar facts related to their use of Mirena manufactured by Bayer.  Plaintiffs in all actions challenge the safety of Mirena and the adequacy of the product's warnings, each of which led to their personal injuries.  This Panel has previously ordered transfer and consolidation of similar cases involving personal injuries stemming from Plaintiffs use of a defendant's product.  *See In Re; Oral Sodium Phosphate Solution-Based Products Liabilty Litigation,* 629 F. Supp. 2d 1352 (JPML 2009); *see also in Re: Vioxx, Products Liability Litigation,* MDL 1657, Transfer Order, (finding a single federal forum for adjudication proper where all actions focused on alleged increased health risks when using the same drug.)

Indeed, Bayer agrees that these multiple filed Mirena cases merit consolidation, as articulated in the defendant's July 2012 Application for Centralized Management (Multicounty Litigation) for New Jersey state-court litigation.  There, Bayer wrote that "[i]n light of their similarities, the rulings in one matter will likely impact the findings in another case" and centralized management of the cases will "streamline this litigation and benefit all parties." *See*, Exh. 1.  The multiple cases filed in New Jersey are no different than the multiple cases filed in various federal districts, and the same benefits would apply.

4

## II.   THE DISTRICT OF SOUTH CAROLINA IS AN APPROPRIATE COURT FOR TRANSFER

Jamie and James Wells live in Summerville, South Carolina, where they resided at the time she discovered her Mirena perforation and migration.  She filed her case in the District of South Carolina in January 2012.  This case involves issues of law and fact common to not only other cases filed in the District of South Carolina, but elsewhere in the Country.  Plaintiff Wells was prescribed Mirena IUD by her health care physician.   Plaintiff Well's Mirena IUD subsequently perforated her uterus resulting in an ectopic pregnancy and requiring laparoscopic removal.  Additionally, the *Baugh* matter, also pending in the District of South Carolina, has been in litigation since January 2011.  As "one of the earliest filed and most advanced actions is pending in that district," consolidation and transfer to District of South Carolina is appropriate. *See In re: MI Windows and Doors, Inc., Product Liability Litigation,* Transfer Order, at Exhibit 2.

### 1.  District of South Carolina, Charleston Division, is not overtaxed by MDL and has resources to handle mass torts

The District of South Carolina, Charleston Division, is an underutilized MDL court that is not overtaxed with multiple MDL actions.  In fact, only one MDL case resides in this District Court presently among the ten sitting judges – *In re: MI Windows and Doors, Product Liability Litigation,* MDL 2333. Further, this jurisdiction has exhibited superior handling of MDL actions in previous litigation. *See In re: Bausch & Lomb Contact Lens Solution Product Liability Litigation*, MDL 1785. This district has an efficiently managed and speedy docket, and is technologically equipped to handle electronic filings.

5

As discussed in *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 173 F. Supp. 2d 1377, 1380 (J.P.M.L. 2001), under-utilization alone justifies the transfer of MDL proceedings to a Court like the District of South Carolina, Charleston Division.  Under-utilization coupled with the necessary resources makes the District of South Carolina, Charleston Division a strong forum for transfer. "[A] centralization in this district permits the Panel to effect the Section 1407 assignment to a . . . court that i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require." *Id.,* at 1380.  The District of South Carolina, Charleston Division meets both of these criterion and is the optimal choice for a transferee forum.

This Panel has often looked at jurist experience and docket considerations to determine the transferee district.  *In re: Celexa and Lexapro Products Liability Litigation*, MDL-1736 (J.P.M.L. February 16, 2006). Judge Richard Gergel, who presides over the *Wells* case, is uniquely qualified to oversee this MDL.  Judge Gergel has been a federal judge since August 9, 2010 with extensive experience in large civil cases and complex litigation.  Judge Gergel's current case load is favorable for MDL assignment.

The District of South Carolina, Charleston Division, has the available judicial resources and the experience necessary to effectively handle these products liability actions.  Data from Federal Court Management Statistics reveal that, as of September 30, 2012, only 8.1% of civil cases filed in the District were over three (3) years old.  As the parties desire speedy resolution of these matters, District of South Carolina, Charleston Division, is well-situated to provide an efficient disposition of these actions.

2.   **The District of South Carolina Has Previously Been Selected as the Transferee Forum for other Complex Product Liability Cases**

Demonstrating its confidence in the District of South Carolina's capabilities, the Panel itself has already selected the district as the transferee forum for other complex product liability cases. *See, e.g In re: MI Windows and Doors, Inc., Products Liability Litigation.,* MDL 2333 (J.P.M.L. 2012).   *See also, In re: Bausch & Lomb Contact Lens Solution Product Liability Litigation*, MDL 1785.  This Panel consistently engages this logic in determining district courts appropriate for transfer.   *See, e.g.,*; *In re Teflon Products Liability Litigation,* MDL-1733 (J.P.M.L. Feb. 21, 2006) (transferring cases where parties were geographically disbursed to Southern District of Iowa to court that "enjoys general docket conditions permitting the Panel to effect the Section 1407 assignment to a court with the present resources to devote to the pretrial matters that this docket is likely to require"); *In re Viagra Products Liability Litigation*, MDL-1724 (J.P.M.L. Feb. 21, 2006) (transferring cases where parties were geographically disbursed to District of Minnesota to a "jurist experienced in complex multidistrict litigation and sitting in a district with the capacity to handle this litigation").

3.   **The District of South Carolina is Easily Reachable**

The parties involved in this litigation are disbursed nationwide.  The product at issue in this case was distributed nationwide.  The District of South Carolina, Charleston Division, provides an accessible location for the litigation of these issues and for travel.  The Charleston Federal Courthouse may be reached by the Charleston International Airport in less than twenty (20) minutes. This airport also provides non-stop service to and from over twenty (20) destinations, with increasing non-stop service in April with the introduction of Jet Blue airlines. As stated by this Panel in the Transfer Order for *In re: Bausch & Lomb, In. Contact Lens Solution, Product Liability Litigation,* "the District of South Carolina provides a logical situs in

regard to the geographic dispersal of the constituent and potential tag-along actions." *See* Transfer Order, at Exhibit 3.

### III.    ALTERNATIVELY, THE EASTERN DISTRICT OF LOUISIANA IS AN APPROPRIATE COURT FOR TRANSFER

Currently, one Mirena case is filed in the Eastern District of Louisiana, including the case of *Watson v. Bayer Healthcare Pharmaceuticals, Inc.,* 2:13-cv-00212 filed by this counsel. While this District has vast experience in handling mass torts, the Eastern District of Louisiana is an underutilized MDL court that is not currently overtaxed with multiple consolidated actions. The Court currently handles six MDLs, one of which – MDL-1657 *Vioxx Products Liability Litigation* – is nearing completion. Sixteen (16) judges sit in the Eastern District, several of which have successfully handled previous MDL actions. The Court is well-equipped to handle electronic filings. As a result of this district's efficiently managed and speedy docket, the Court is currently underutilized as an MDL forum.

Judge Lance Africk is uniquely qualified to oversee this MDL. Judge Africk has been a federal judge since April 17, 2002 with extensive experience in civil cases and multiple complex tort litigation. Judge Africk's current case load is favorable for MDL assignment. Transfer is appropriate because "the Louisiana district not only offers a location in the central part of the United States, but, more importantly, enjoys general caseload conditions permitting the Panel to effect the Section 1407 assignment to a court with the present resources to devote the time to pretrial matters that this docket is likely to require." *See In re: Propulsid, Product Liability Litigation,* Transfer Order, at Exhibit 4.

### 2.    Statistical Data Relating to Caseloads and Speedy Resolution of District Courts Favor the Eastern District of Louisiana

The Eastern District of Louisiana has the available judicial resources and the experience necessary to effectively handle these products liability actions.   Data from Federal Court Management Statistics reveal that, as of September 30, 2012, only 29.0% of civil cases filed in the District were over three (3) years old.   As the parties desire speedy resolution of these matters, Eastern District of Louisiana, is well-situated to provide an efficient disposition of these actions.

**3.      The Eastern District of Illinois Has Previously Been Selected
as the Transferee Forum for other Complex Product Liability Cases**

The Eastern District of Louisiana has been a frequent jurisdiction for complex litigation

MDLs. This Panel has often looked at jurist experience and docket considerations to determine

the transferee district.  Where "no district stands out as the geographic focal point" for a

nationwide docket, the Panel should search for a "transferee judge with time and experience to

steer this complex litigation on a prudent course." Transfer Order, *In re: Vioxx, Products

Liability Litigation.,* MDL 1657 (J.P.M.L. 2005).  When making that determination for the Vioxx

litigation, the Panel chose the Eastern District of Louisiana as a district with the capacity to handle

this litigation. *Id.*

**4.   The Eastern District of Louisiana is Accessible for All Parties**

The parties involved in this litigation are disbursed nationwide, although national Mirena

defense counsel is located in Houston, Texas, a 5 hour drive from New Orleans. Mirena was and

is distributed nationwide.  The Eastern District of Louisiana is an accessible travel destination,

and the New Orleans Federal Courthouse may be reached by the Louis Armstrong New Orleans

International Airport in less than twenty minutes. This airport also provides non-stop service to

and from over thirty-five cities from coast-to-coast.  Transfer would be appropriate to the Eastern

District of Louisiana based on its central location in the United States.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully join in the Motion for Transfer or

Consolidation and further move that the transferee Court be the District of South Carolina,

Charleston Division, or, alternatively, the Eastern District of Louisiana.

Dated:  February 7, 2013

Respectfully submitted,

s/Carmen S. Scott

Carmen S. Scott
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
843-216-9160 (Phone)
843-216-9430 (Fax)
cscott@motleyrice.com

**COUNSEL FOR PLAINTIFFS KELLI BAUGH AND JUSTIN BAUGH AND JAIME WELLS AND JAMES WELLS**